**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **WAYD DAVIS,** individually and on behalf of similarly situated persons,<br><br>        Plaintiff,<br><br>   **v.**<br><br>**A.&M. PIZZA, INC. d/b/a DOMINO'S PIZZA** and **ARTHUR HURTEAU III,** individually,<br><br>        Defendants. | **Case No. 3:21-cv-00386**<br><br>**Jury Demanded** |

## COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, INDIANA MINIMUM WAGE LAW and MISSOURI MINIMUM WAGE LAW

Plaintiff Wayd Davis ("Plaintiff"), individually and on behalf of all other similarly situated delivery drivers, brings this Complaint against Defendants A.&M. Pizza, Inc. d/b/a Domino's Pizza and Arthur Hurteau III (collectively "Defendants") and alleges as follows:

1.  Defendants operate numerous Domino's Pizza franchise stores throughout Indiana and Missouri. Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers. However, instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants use a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

2.  Plaintiff bring this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a class action under the Indiana Minimum Wage Law Ind.

1

Code § 22-2-2-1 *et seq.*, and  under the Missouri Minimum Wage Law, RSMo. §290.500, *et seq.* ("Missouri Wage Law"), to recover unpaid minimum wages owed to themselves and similarly situated delivery drivers employed by Defendants at its Domino's Pizza stores.

## Jurisdiction and Venue

3.   The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

4.   Venue in this District is proper under 28 U.S.C. § 1391 because Defendants own and operate Domino's Pizza franchise stores in this District.

## Parties

5.   Defendant, A.&M. Pizza, Inc. d/b/a Domino's Pizza is a Missouri corporation maintaining its principal place of business at 4042 W Republic Rd., Battlefield, MO, 65619 and may be served via its registered agent Arthur Hurteau III who may be served at 538 S National Ave Springfield, MO, 65802-3434, or wherever he may be found.

6.   Defendant, Arthur Hurteau III is individually liable because, during the relevant times, he was an owner of substantial interests in Defendant A.&M. Pizza, Inc., served as officer of the entity, and held managerial responsibilities and substantial control over terms and conditions of drivers' work as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records. Defendant may be served at 538 S National Ave Springfield, MO, 65802-3434, or wherever he may be found.

7.  Plaintiff Wayd Davis was employed by Defendants from approximately June 2017 until August 2018 as a delivery driver for Defendants. Plaintiff's consent to pursue this claim under the FLSA is attached to this Original Complaint as "**Exhibit 1**."

### General Allegations
*Defendants' Business*

8.  Defendants own and operate numerous Domino's Pizza franchise stores including stores within this District and Division.

9.  Arthur Hurteau III is an owner, officer and director of corporate Defendant A.&M. Pizza, Inc. In this capacity, Mr. Hurteau put the pay scheme at issue in place, has overseen and enforced Defendants' pay practices, and is, therefore, individually liable for the violations at issue.

10. Defendants' Domino's Pizza stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

### *Defendants' Flawed Automobile Reimbursement Policy*

11. Defendants require their delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

12. Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizza and other food items for the primary benefit of Defendants.

13. Defendants' delivery driver reimbursement policy reimburses drivers on a per-mileage basis, but the per-mileage reimbursement equates to below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendants' delivery drivers.

14. The result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its drivers' automobile expenses.

15. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.535 and $.545 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $.571 and $.608 per mile during the same period for drivers who drive 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

16. However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

17. Defendants' reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

18. Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages it pays to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

19. Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal minimum wage requirements.

20. In sum, Defendants' reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

### Defendants' Failure to Reasonably Reimburse Automobile Expenses

### Causes Minimum Wage Violations

21. Defendants paid Plaintiff $7.70 per hour while he worked in Defendants' Domino's Pizza store and nominally paid him $4.25 per hour when he performed deliveries.

22. The federal minimum wage has been $7.25 per hour since July 24, 2009.

23. The Missouri Minimum wage was increased to $7.70 on January 1, 2017 and was increased again to $7.85 on January 1, 2018.

24. During the time Plaintiff worked for Defendants as a delivery driver, he was reimbursed just $.40 per mile. Plaintiff's average round trip delivery distance was approximately 5 miles.

25. During the relevant time period, the IRS business mileage reimbursement rate ranged between $.535 and $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the lowest IRS rate in effect during that period as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased their net wages by at least $.135 ($.535 - $.40) per mile.

26. During his employment by Defendants, Plaintiff regularly made 3 or more deliveries per hour. Thus using even a conservative under-estimate of Plaintiff's actual expenses and damages, every hour on the job decreased Plaintiff's net wages by at least $2.03 ($.135 x 5 miles/delivery x

3 deliveries/hour = \$2.03), resulting in a net hourly wage rate of approximately \$2.22 (\$4.25 nominal hourly pay rate - \$2.03 per hour "kickback" = \$2.22 net hourly wage).

27. All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

28. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

29. While the amount of Defendants' actual reimbursements per delivery may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other Domino's Pizza stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

30. Defendants' low reimbursement rates were a frequent complaint of Defendants' delivery drivers, which resulted in discussions with management, yet Defendants continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

31. The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay the federal minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of their employees.

**Class and Collective Action Allegations**

32. Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

33. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

34. Plaintiff, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage. The number and identity of other Plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

35. Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

a.    They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b.    They have delivered pizza and food items using automobiles not owned or maintained by Defendants;

c.    Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d.    They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e.    They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.    They were subject to the same pay policies and practices of Defendants;

g.    They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of

reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h.    They were reimbursed similar set amounts of automobile expenses per delivery; and,

i.    They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

36. Plaintiff brings Counts II as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and as the Class Representatives of the following persons (the "Class"):

> All current and former delivery drivers employed by Defendants
> since the date five years preceding the filing of this Complaint.

37. The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

38. The Class satisfies the numerosity standard as it consists of hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

39. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

a.    Whether Defendants failed to pay Class members the minimum wage required by Missouri law,

b.    Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items,

c.      Whether Defendants' formula and / or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the Class members, and

d.      Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of Missouri law.

40. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

41. Plaintiff's claims are typical of those of the Class in that:

a.      Plaintiff and the Class have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b.      Plaintiff and the Class delivered pizza and food items using automobiles not owned or maintained by Defendants;

c.      Defendants required Plaintiff and the Class to maintain these automobiles in a safe, legally-operable, and insured condition;

d.      Plaintiff and the Class incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e.      Plaintiff and the Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.      Plaintiff and the Class were subject to the same pay policies and practices of Defendants;

g.    Plaintiff and the Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h.    Plaintiff and the Class were reimbursed similar set amounts of automobile expenses per delivery; and

i.    Plaintiff and the Class were paid at or near the Missouri minimum wage before deducting unreimbursed business expenses.

42. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class.

43. Plaintiff is an adequate representative of the Class because they are members of the Class and their interests do not conflict with the interest of the members of the Class they seek to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

44. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

45. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a

substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### Count I:  Violation of the Fair Labor Standards Act of 1938

46. Plaintiff reasserts and re-allege the allegations set forth above.

47. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

48. Defendants are subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

49. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

50. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

51. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

52. As alleged herein, Defendants have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

53. Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

54. Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

55. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' stores.

56. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

57. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants are not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

58. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b),

together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

### Count II:  Violations of the Indiana Minimum Wage Law

59. Plaintiff Davis reasserts and re-alleges the allegations set forth above.

60. At all relevant times, Defendants have been and continue to be an "employer" within the meaning of the Indiana Minimum Wage Law. Ind. Code § 22-2-2-3.

61. At all relevant times, Defendants have employed, and continue to employ, "employees," including Plaintiff Davis, within the meaning of the Indiana Minimum Wage Law. *Id.*

62. Plaintiff Davis and the Indiana class members are covered, non-exempt employees within the meaning of Indiana Minimum Wage Law. Accordingly, Indiana employees are entitled to be paid at least minimum wage for all hours worked in each workweek. Ind. Code § 22-2-2-3; Ind. Code § 22-2-2-4(h) & (k)

63. Pursuant to the Indiana Minimum Wage Law, the Defendants were required to pay Plaintiff Davis and the Putative Indiana Plaintiffs all wages, when due, for all hours of work at hourly rates which exceeded the minimum wage rate under the FLSA on their regular pay date. Ind. Code § 22-2-2-4.

64. Defendants were required to provide employees with notice for wage deductions permissible. Ind. Code § 22-2-2-8.

65. Defendants failed to pay Plaintiff Davis and the Putative Indiana Plaintiffs reimbursements for travel expenses "incurred by an employee in the furtherance of the employer's interests" under the Indiana Minimum Wage Law and thus failed to comply with this statute and its accompanying administrative code. Ind. Code § 22-2-2-4.

66. As set forth above, Plaintiff Davis and the Putative Indiana Plaintiffs have sustained losses and lost compensation as a proximate result of Defendants' violations.  Accordingly, Plaintiff on behalf of himself and the Putative Indiana Plaintiffs, seeks damages in the amount of his unpaid earned compensation, liquidated damages, plus any applicable interest set forth in Indiana Minimum Wage Law, Ind. Code § 22-2-2-9 from the date each amount came due as provided by the Indiana Minimum Wage Law.

67. As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under the FLSA and the Indiana Minimum Wage Law. As described above, these violations were committed knowingly, willfully and with reckless disregard of applicable law.

68. Plaintiff Davis, on behalf of himself and the Putative Indiana Plaintiffs, seeks recovery of his costs and attorneys' fees incurred in this action. Ind. Code § 22-2-2-9.

### Count III: Violations of the Missouri Minimum Wage Law

69.  Plaintiff Davis reasserts and re-alleges the allegations set forth above.

70. At all relevant times, Defendants have been and continue to be an "employer" within the meaning of the Missouri Minimum Wage Law, RSMo. § 290.500 (3),(4).

71. At all relevant times, Defendants have employed, and continue to employ, "employees", including Plaintiff Davis, within the meaning of the Missouri Minimum Wage Law, RSMo. § 290.500 (3).

72. Plaintiff Davis and the Missouri class members are covered, non-exempt employees within the meaning of the Missouri Minimum Wage Law. Accordingly, Missouri employees are entitled to be paid at least minimum wage for all hours worked in each workweek. § 290.502.1.

73. Pursuant to the Missouri Minimum Wage Law, the Defendants were required to pay Plaintiff Davis and the Putative Missouri Plaintiffs all wages, when due, for all hours of work at

hourly rates which exceeded the minimum wage rate under the FLSA on their regular pay date. RSMo. § 290.500, *et seq*.

74. Defendants were required to provide employees with advanced notice for wage deductions permissible.

75. Defendants failed to pay Plaintiff Davis and the Putative Missouri Plaintiffs reimbursements for travel expenses "compensation due to an employee by reason of his employment" under the Missouri Minimum Wage Law and thus failed to comply with this statute and its accompanying administrative code.

76. The foregoing conduct, as alleged, constitutes willful violations of the Missouri Minimum Wage Law, RSMo. § 290.525, *et seq*.

77. As set forth above, Plaintiff Davis and the Putative Missouri Plaintiffs have sustained losses and lost compensation as a proximate result of Defendants' violations.  Accordingly, Plaintiff on behalf of himself and the Putative Missouri Plaintiffs, seeks damages in the amount of his unpaid earned compensation, liquidated damages, plus any applicable interest set forth in Missouri Minimum Wage Law, RSMo. § 290.525, *et seq.,* from the date each amount came due as provided by the Missouri Minimum Wage Law.

78. As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under the FLSA and the Missouri Minimum Wage Law. As described above, these violations were committed knowingly, willfully and with reckless disregard of applicable law.

79. Plaintiff Davis, on behalf of himself and the Putative Missouri Plaintiffs, seeks recovery of his attorneys' fees as provided by the Missouri Minimum Wage Law, RSMo. § 290.527, *et seq.*

**Count IV: Unjust Enrichment**

80. Plaintiff reasserts and re-allege the allegations set forth above.

81. Plaintiff conferred a benefit upon Defendants by working on their behalf without compensation.

82. Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff or should have been aware that they were receiving the benefit conferred by Plaintiff.

83. Defendants accepted and retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages, (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Demand for Jury Trial

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Respectfully submitted,

*/s/ J. Forester*

**J. Forester**
Texas Bar No. 24087532
**FORESTER HAYNIE PLLC**
400 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 phone
(469) 399-1070 fax
jay@foresterhaynie.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

Service will be made on Defendants with summons to be issued by the clerk according to the

Federal Rules of Civil Procedure.

*/s/ J. Forester*

**J. Forester**